1

2

3

4

5

6

7

8

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

JAMES E. LEWIS II,

       Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

       Defendant.

_____/

No. C 08-5669 MHP

**MEMORANDUM & ORDER**

**Re: Cross-Motions for Summary Judgment**

16

17

18

19

20

21

       Having exhausted his administrative remedies, claimant James Lewis II seeks judicial review

pursuant to 42 U.S.C. section 405(g) of a final decision by Michael J. Astrue, the Commissioner of

Social Security ("the Commissioner"). Lewis alleges that he was improperly denied Social Security

Benefits and Supplemental Security Income. Now before the court are cross-motions for summary

judgment and Lewis's motion in the alternative for remand. Having considered the parties'

arguments and submissions, the court enters the following memorandum and order.

22

23

BACKGROUND

24

25

26

27

28

       In August, 2006, Lewis filed applications for disability benefits and supplemental security

income under Titles II and XVI of the Social Security Act. Certified Administrative Transcript

("Tr.") at 38, 82-92. In both applications, Lewis alleged disability beginning on December 30, 2002.

Tr. at 38. Both applications were initially denied on January 24, 2007. They were again denied

upon reconsideration on May 10, 2007. Thereafter, Lewis filed a timely written request for hearing

1  on July 8, 2007.  The hearing was held on June 9, 2008, before an administrative law judge ("ALJ").

2  *Id.*

3      During the hearing, Lewis alleged that he could not work due to chronic back pain, left

4  shoulder pain, two bad knees and bone spurs in his hips.  Tr. at 15-16.  He also stated that he suffers

5  from bipolar disorder.  Tr. at 19.  Lewis was first diagnosed with bipolar disorder by Veterans

6  Administration ("VA") doctors and claims that he has suffered from the condition for approximately

7  eight years.  Tr. at 19-20, 295, 335.  In 2006, as a result of his physical problems and his bipolar

8  disorder, the VA determined that Lewis was seventy percent disabled for pension purposes.  Tr. at

9  332-33.  Fifty of the seventy percentage points are attributable to bipolar disorder.  *Id.*

10      In addition to his physical and psychological problems, Lewis also suffers from substance

11  dependence, but attends sobriety groups to address the condition.  Tr. at 19-20.  In February 2008, he

12  tested positive for cocaine.  Tr. at 19-20.

13      On July 22, 2008, the ALJ issued an opinion finding that Lewis was "not disabled."  Tr. at

14  38-48.  In reaching this decision, the ALJ applied the five step evaluation required by 20 C.F. R.

15  Sections 404.1520 and 416.920.  *See* Tr. at 39.  The evaluation process uses the following sequential

16  analysis: (1) If the claimant is performing substantial gainful work, he is not disabled.  If he is not

17  engaging in substantial gainful activity, the analysis proceeds to the next step.  (2) If the claimant

18  does not have a medically determinable impairment or combination of impairments that is "severe,"

19  he is not disabled.  If he does have a severe impairment or combination of impairments, the analysis

20  proceeds to the next step.  (3) If the claimant's impairment or combination of impairments meets or

21  medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,

22  and meets the duration requirement, the claimant is deemed disabled.  If his impairment does not

23  meet or medically equal a listed impairment, the analysis proceeds to the next step.  (4) If claimant's

24  RFC[1] allows him to perform his past relevant work, he is not disabled.  If it does not allow him to

25  perform his past relevant work, the analysis proceeds to the next step.  (5) If other work exists in

26  significant numbers in the national economy that accommodates the claimant's RFC and vocational

27  factors, he is not disabled.  If claimant's RFC and vocational factors do not allow him to perform

28

**United States District Court**
For the Northern District of California

2

1   other work and his impairment meets the duration requirement, he is disabled.  At this step, the

2   government bears the burden of proof to show that work exists in the relevant numbers.

3          At step one, the ALJ found that Lewis had not engaged in substantial gainful activity since

4   December 30, 2002.  Tr. at 40.  At step 2, the ALJ found that Lewis "has the following severe

5   impairments: low back pain, left shoulder pain, knee pain and depression with drug/alcohol

6   addiction."  Tr. at 40.  At step three, the ALJ found that the impairment did not meet or medically

7   equal any criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

8          In order to complete steps four and five, the ALJ had to assess Lewis' RFC.  Tr. 40-42.  In

9   making that assessment, the ALJ cited the opinions of several medical examiners, including two

10  government doctors who were responsible for determining Lewis' psychological impairments in

11  connection with his application for Social Security benefits, Dr. Ida Hilliard and Dr. Tania Shertock.

12  Hilliard was one of the doctors responsible for evaluating Lewis's first application for benefits based

13  on the available medical evidence.  Because the existing medical evidence was lacking, a

14  psychological exam was scheduled to supplement Lewis's medical record.  During this exam, Lewis

15  was examined by Shertock.[2]  In reference to these examiners, the ALJ stated:

> Tania Shertock, Ph.D. performed a psychological consultative evaluation on December 17, 2006. . . . Dr. Shertock diagnosed polysubstance dependence (in partial remission), PTSD, bipolar I disorder, personality disorder NOS with antisocial features, and assigned a GAF of [50].[3]  Dr. Shertock opined that the claimant is able to maintain concentration, persistence and pace, and is able to perform simple repetitive tasks, detailed tasks, and some complex tasks.  She noted that he may have difficulty adapting to work stress and changes and could have difficulty maintaining a schedule on a consistent basis.  She further opined that the claimant would be able to appropriately interact with supervisors and co-workers in a job setting and had the capacity to manage his funds.
>
> State agency examiners opined that the claimant's affective disorder with substance addiction disorders resulted in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration persistence and pace, and one or two episodes of de-compensation.  His mental residual functional capacity was for moderate restriction in the areas of maintaining attention and concentration for extended periods, and responding appropriately to changes in work setting.

Tr. at 44 (citations omitted).  The ALJ then stated the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with occasional stooping, crawling and bending; no operating foot pedals, and occasional overhead reaching and occasional pushing and pulling with non dominate hand.  In addition he had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in concentration, persistence

3

1   and pace (40-50% reduction in the ability to perform detailed and complex tasks and 10%
2   reduction in the ability to perform simple and repetitive tasks), and no episodes of
    decompensation.

3      Tr. at 42.  At step four, the ALJ found that Lewis could not perform his past relevant work as
4   a bus driver, tour guide, janitor, or program aide based upon his RFC.  Tr. at 46.  At step five, the
5   ALJ stated that Lewis's RFC, age, education and work experience supported a finding that there are
6   jobs that exist in significant numbers in the national economy that Lewis could perform.  *Id.*  In
7   making this decision, the ALJ relied on the testimony of a vocational expert.  Tr. at 47.  The ALJ
8   asked the vocational expert whether jobs existed in the national economy for an individual with
9   Lewis's age, education, work experience and RFC.  The vocational expert testified that such an
10  individual would be able to perform the requirements of various jobs that were available regionally
11  and nationally.  The ALJ then held that Lewis was "not disabled" as defined by the Social Security
12  Act.  *Id.*

13     Lewis subsequently filed this request for judicial review, contending that: (1) the ALJ failed
14  to invoke the proper disability analysis regarding substance abuse; (2) the ALJ improperly
15  concluded that substance abuse was material to Lewis's mental disorder; (3) the ALJ's RFC finding
16  is not supported by substantial evidence; and (4) the ALJ failed to give the proper weight to the
17  VA's determination that Lewis was 70% disabled.

18

19  LEGAL STANDARD

20     A district court may disturb the Commissioner's final decision "only if it is based on legal
21  error or if the fact findings are not supported by substantial evidence."  *Edlund v. Massanari*, 253
22  F.3d 1152, 1156 (9th Cir. 2001).  "Substantial evidence, considering the entire record, is relevant
23  evidence which a reasonable person might accept as adequate to support a conclusion."  *Matthews v.*
24  *Shalala*, 10 F.3d 678, 679 (9th Cir. 1993).  It is more than a scintilla, but less than a preponderance.
25  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court's review "must consider the record as a
26  whole," which includes both evidence which supports as well as evidence which detracts from the
27  Commissioner's decision.  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th

28

4

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the

2    Commissioner's decision must be affirmed.  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

3    Even if substantial evidence supports the Commissioner's findings, the decision must be set aside if

4    improper legal standards were applied in reaching that decision.  *See Benitex v. Califano*, 573 F.2d

5    653, 655 (9th Cir. 1978).

6

7    DISCUSSION

8    I.    Substance Abuse Analysis

9          Lewis argues that the ALJ committed reversible error when he failed to invoke the proper

10   analysis regarding substance abuse.  Specifically, Lewis contends that the ALJ failed to follow the

11   steps outlined in *Bustamante v. Massanari* and improperly found that substance abuse was

12   "material" to Lewis's mental disability.

13         "A finding of 'disabled' under the-five step inquiry does not automatically qualify a claimant

14   for disability benefits."  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  A claimant is

15   ineligible for disability benefits if the claimant's drug addiction or alcoholism is a contributing

16   factor material to the determination of disability.  *See* 42 U.S.C. § 423(d)(2)(c); 20 C.F.R.

17   § 404.1535; *Bustamante*, 262 F.3d at 954.  If the ALJ initially finds that the claimant is disabled

18   under the five-step inquiry, he must then conduct a drug abuse and alcoholism ("DAA") analysis to

19   determine if substance use is a contributing factor.  *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.

20   2007).  However, if the ALJ determines that the claimant is "not disabled" under the five step

21   inquiry, considering both mental impairments and substance abuse, he will never reach the DAA

22   analysis.

23         The DAA analysis requires determining which of the claimant's disabling limitations would

24   remain if the claimant stopped using drugs or alcohol.  *Id.*  Essentially, it is a determination of

25   whether the claimant would still be disabled if drugs and alcohol were not a factor.  *See id.*  In order

26   to make this determination, the ALJ will "separate out" the disabling limitations that are caused by

27   drug and alcohol use.  *Bustamante*, 262 F.3d at 955.  "If the remaining limitations would still be

28

5

1   disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his

2   disability." *Parra*, 481 F.3d at 747.  "If the remaining limitations would not be disabling, then the

3   claimant's substance abuse is material and benefits must be denied." *Id.*

4           An ALJ may not conduct the DAA analysis before finding that the claimant is disabled under

5   the five-step evaluation.  *Bustamante*, 262 F.3d at 955.  Doing so is an error on the part of the ALJ

6   and grounds for reversal.  *Id.*

7           A.      Proper Sequence of Analysis

8           Lewis first contends that the ALJ improperly "jumped" to the DAA Analysis before

9   completing the five-step inquiry because the ALJ failed to consider both depression and substance

10   abuse together in assessing Lewis's RFC.  The Commissioner argues that the ALJ properly found

11   that Lewis was "not disabled" under the five-step inquiry considering all his impairments, including

12   substance abuse, and therefore never reached the DAA analysis.  Thus, the court must determine

13   whether the ALJ properly considered all of Lewis' impairments, including those caused by

14   substance abuse, during the five-step evaluation, or the ALJ improperly "separated out" the

15   impairments caused by substance use.

16           During the discussion of how the ALJ arrived at Lewis's RFC, between steps 4 and 5, the

17   ALJ references various instances of substance use including drinking a six pack of beer each day and

18   incidents of marijuana and cocaine use.  He also discounts the symptoms and effects of such use

19   based on a medical diagnosis that the substance use was in remission.  Specifically the ALJ states:

20   "[Lewis] reported that he formally [sic] used cocaine, cannabis and alcohol starting from the time he

21   went to the army.  He went into a substance abuse program in 1991 at the VA in Menlo Park.  He is

22   in partial remission as he still drinks a six pack of beer a day." Tr. at 44.  Based upon this

23   discussion, it appears that the ALJ considered Lewis's substance abuse when making an RFC

24   assessment.  However, after considering all the evidence of record, the ALJ then discounts the

25   severity of Lewis's mental impairments based upon the fact that they are caused, to some extent, by

26   substance abuse.  He states:

27           After considering the evidence of record, the undersigned finds that the claimant's medically
             determinable impairments could reasonably be expected to produce the alleged symptoms;

28

                                                        6

1    however, the claimant's statements concerning the intensity, persistence, and limiting effects

2    of these symptoms are not credible to the extent they are inconsistent with the residual
     functional capacity assessment for the reasons explained below. . . .

3    As to the claimant's mental impairments there are very few treatment records to support
     depression. . . . Dr. Shertock reported that the claimant's substance use was in partial

4    remission.  When seen in February 2008, the claimant admitted to recent alcohol use and
     smoking marijuana "once in a while."  Moreover, he testified that [he] tested positive for

5    cocaine in February 2008.  The claimant has not [been] compliant with treatment as he has
     been using drugs with alleged bipolar condition.  *The undersigned finds the claimant's*

6    *ongoing substance use is material to mental disorder.*

7    Tr. at 45 (emphasis added).  From this analysis, it appears that the ALJ is discounting the "intensity,

8    persistence, and limiting effects" of Lewis's mental impairments in part because Lewis's "ongoing

9    substance use is material to mental disorder."  Although the ALJ has not explicitly stated so, he is

10   conducting an analysis of how Lewis's mental impairments are affected by his substance use.  This

11   type of "materiality" inquiry regarding substance use is appropriate under the DAA analysis but not

12   the initial five-step evaluation.  Because this analysis was made during the determination of the

13   RFC, prior to steps 4 and 5, it was made in error.  Therefore, this case is remanded for further

14   proceedings, during which the ALJ shall complete the initial five-step inquiry without determining

15   whether Lewis's substance use is material to the severity of his mental impairments.

16        B.    Materiality

17        Lewis also claims that the ALJ erred in finding that substance use was material to mental

18   disorder because the ALJ did not cite to any treating psychologist or psychiatrist who reached the

19   same conclusion.  Under the DAA analysis, the claimant bears the burden of proof, not the

20   government.  *Parra*, 481 F.3d at 748.  Therefore, once the ALJ completes the five step inquiry and

21   finds Lewis disabled, the burden is on Lewis to prove that he would still be disabled in the absence

22   of drug or alcohol use.  Nevertheless, the ALJ should still explain what evidence, or lack of

23   evidence, supports a finding that Lewis has not met his burden on this issue.  Simply stating that "the

24   [ALJ] finds the claimant's ongoing substance use is material to mental disorder" with no further

25   explanation is insufficient.  Accordingly, if the ALJ finds Lewis to be disabled after properly

26   conducting the five-step inquiry on remand, and the ALJ concludes that Lewis would not be disabled

27

28

                                                    7

1   absent drug and alcohol use, he shall articulate a reason or reasons why Lewis has failed to meet his

2   burden.

3   II.      The ALJ's RFC Determination

4           Lewis next argues that the ALJ's RFC determination as to his mental capabilities is not

5   supported by substantial evidence because it is inconsistent with various medical opinions in the

6   record.  Specifically, he contends that the opinions of Shertock and Hilliard, and his VA disability

7   determination, are inconsistent with the ALJ's findings of "mild" limitations in the following areas:

8   activities of daily living; social functioning; and concentration, persistence and pace.

9           A.      Dr. Shertock's Opinion

10          Lewis first contends that Dr. Shertock's opinion that Lewis had a GAF of "50" and that he

11  "may have difficulty adapting to work stress" is inconsistent with ALJ's finding of an RFC with

12  "mild" limitations, particularly with respect to concentration, persistence, and pace.  Lewis fails to

13  indicate exactly how Shertock's opinion is inconsistent with the ALJ's RFC finding.  Shertock

14  specifically stated that Lewis was able to maintain concentration, persistence, and pace.  The ALJ's

15  RFC finding of "mild" restrictions in this area is consistent with this opinion.  Additionally, the fact

16  that Shertock assigned Lewis a GAF score of "50" within a portion of her evaluation is not

17  necessarily inconsistent with "mild" limitations.  Obviously Shertock did not find the two statements

18  inconsistent because she assigned the GAF score and stated that Lewis could maintain concentration,

19  persistence and pace in the same evaluation.  Moreover, they are both consistent with "mild"

20  limitations in the area and therefore consistent with the ALJ's determination.

21          B.      Dr. Hilliard's Assessment

22          Lewis also contends that Dr. Hilliard's RFC assessment, which includes "moderate"

23  restrictions in Lewis's ability to maintain attention and concentration for extended periods and

24  respond appropriately to changes in the work setting, is inconsistent with the ALJ's finding of

25  "mild" limitations in daily activities, social functioning, and concentration, persistence and pace.

26          This argument ignores the entirety of Hilliard's assessment.  Although Hilliard did assess

27  "moderate" restrictions in two specific categories relating to work functions, he assessed Lewis on

28

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1  twenty different work-related functions.  Tr. at 276-77.  In his assessment, Hilliard concluded that

2  Lewis was "not significantly limited" in eighteen other work-related functions.  *Id.*  This included

3  areas such as, "the ability to understand and remember detailed instructions," "the ability to get

4  along with coworkers or peers without distracting them or exhibiting behavioral extremes," "the

5  ability to complete a normal workday and workweek without interruptions from psychologically

6  based symptoms and to perform at a consistent pace without an unreasonable number and length of

7  rest periods," along with fourteen other areas.  *Id.*  In every single one of these other eighteen

8  categories, Hilliard found that Lewis was not significantly limited.  *Id.*

9       In comparison, the ALJ found that Lewis had "mild" limitations in three broad categories:

10  activities of daily living, maintaining social functioning, and concentration, persistence and pace.

11  Moreover, one of these categories included at 40-50% reduction in the ability to perform detailed

12  complex tasks, and a 10% reduction in the ability to perform simple and repetitive tasks.  These

13  ratings are consistent with Hilliard's overall assessment.

14      C.   The VA Disability Determination

15       Lewis also contends that the ALJ failed to give the proper evidentiary weight to the VA's

16  determination that he was 70% disabled, or to provide persuasive, specific, valid reasons why it was

17  not accorded such weight.  The Commissioner contends that the ALJ properly considered the VA's

18  determination, gave it proper weight, and assessed a consistent RFC.  Generally, an ALJ must give

19  great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th

20  Cir. 2002).  This is because of "the marked similarity between these two federal disability

21  programs."  *Id.*  However, because the two programs are not identical, "the ALJ may give less

22  weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are

23  supported by the record."  *Id.*

24       The Commissioner's argument that the VA opinion was accepted and is reflected in the

25  ALJ's RFC determination is unconvincing.  Other than mentioning it in the recitation of evidence,

26  there is no indication that the VA's opinion played any role in the ALJ's assessment.  Additionally,

27  the conclusion that Lewis had "mild" restrictions in activities of daily living, maintaining social

28                  9

United States District Court

For the Northern District of California

1  functioning, and concentration persistence and pace appears on its face to be inconsistent with a

2  seventy percent disability rating, fifty percentage points of which are attributable to bipolar disorder.

3  The Commissioner argues that the ALJ accounted for the 50% mental disability in assessing

4  a 40-50% reduction in the ability to perform detailed and complex tasks and 10% reduction in the

5  ability to perform simple and repetitive tasks.  However, it is unlikely that a 50% disability rating

6  due to bipolar disorder would result only in a discounted ability to perform complex tasks.  More to

7  the point, the ALJ offers no indication that the VA determination played any role in his opinion.  At

8  no point does he discuss the weight that he gives or does not give to the VA determination, nor does

9  he break the VA determination down into its physical and mental components.  Therefore, the ALJ

10  failed to properly consider and address the disability determination by the VA.

11  III.    Remand for Further Proceedings

12  Lewis requests that this court reverse the ALJ's decision and enter an order for immediate

13  payment of benefits.  This would be inappropriate at this point.  As a general rule, remand is

14  warranted if additional administrative proceedings could remedy defects in the Commissioner's

15  decision.  *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1    ///

2    ///

3    CONCLUSION

4         For the foregoing reasons, the Commissioner's motion for summary judgment is GRANTED

5    IN PART and DENIED IN PART.  Plaintiff's motion for summary judgment is DENIED, and his

6    motion for remand is GRANTED.  This case is REMANDED to the ALJ for further administrative

7    proceedings.  The ALJ shall determine whether plaintiff is "disabled" under the proper five-step

8    inquiry after giving appropriate weight to the VA's determination of disability.  If the ALJ finds

9    plaintiff to be disabled, only then shall the ALJ determine whether Lewis has met the burden of

10   proving that he would still be disabled absent his drug and alcohol use, as discussed above.  If the

11   ALJ finds plaintiff fails to meet his burden under the DAA analysis, the ALJ shall articulate reasons

12   for his finding.

13

14        IT IS SO ORDERED.

15

16   Dated: December 15, 2009

17   MARILYN HALL PATEL
     United States District Court Judge
18   Northern District of California

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

11

1

**United States District Court**
For the Northern District of California

<u>**ENDNOTES**</u>

2

1.      As a prerequisite to steps 4 and 5, the examiner must determine the claimant's Residual
Functional Capacity ("RFC").  The RFC is the claimant's ability to do physical and mental work
3      activities on a sustained basis despite the limitations of his impairments.

4

2.      Most Social Security disability claims are initially processed through a network of local Social
Security Administration field offices and State agencies (usually called "Disability Determination
5      Services" or "DDSs").  The field office is responsible for verifying non-medical eligibility requirements,
which may include age, employment, marital status or Social Security coverage information. The field
6      office then sends the case to a DDS for evaluation of disability.  The DDSs, which are fully funded by
the Federal Government, are state agencies responsible for developing medical evidence and making
7      the initial determination whether or not a claimant is disabled or blind under the law.  Usually, the DDS
tries to obtain evidence from the claimant's own medical sources first.  If that evidence is unavailable
8      or insufficient to make a determination, the DDS will arrange for a consultative examination (CE) to
obtain the additional information needed. The claimant's treating source is the preferred source for the
9      CE, but the DDS may obtain the CE from an independent source. After completing its development of
the evidence, trained staff at the DDS makes the initial disability determination.  *See* Social Security
10     Administration, Disability Determination Process, http://www.ssa.gov/disability/determination.htm (last
visited Nov. 19, 2009).

11

3.      The ALJ's opinion recalls a GAF of 55; however, Shertock's report lists a GAF of 50.  Tr. at
12     256.  A GAF (Global Assessment of Functioning) score is used by doctors to rate the psychological,
social and occupational functioning of a patient and assess his treatment.  *Morgan v. Comm'r of Soc.*
13     *Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28